# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
Assigned on Briefs at Knoxville January 29, 2013

## ADRAIN KEITH WASHINGTON v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Davidson County**
**No. 2006-B-1538      Steve Dozier, Judge**

_____

**No. M2012-00705-CCA-R3-PC      Filed March 12, 2013**

_____

Petitioner, Adrain Keith Washington, was convicted of aggravated sexual battery and sentenced to serve twelve years in prison. Following an unsuccessful direct appeal, he filed a petition for post-conviction relief, which was denied. On appeal, he claims that trial counsel rendered ineffective assistance of counsel by failing to argue the "rule of cancellation" and by failing to object to certain prejudicial testimony. Based on our review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROGER A. PAGE, J., delivered the opinion of the court, in which ALAN E. GLENN and JEFFREY S. BIVINS, JJ., joined.

William E. Griffith, Nashville, Tennessee, for the appellant, Adrain Keith Washington.

Robert E. Cooper, Jr., Attorney General and Reporter; Deshea Dulany Faughn, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Sharon Reddick, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I. Facts and Procedural History

#### A. Facts from Trial

On direct appeal, our court summarized the facts presented at trial as follows:

> Appellant was a "family friend" of eight-year old S.P., the victim. In 2006, S.P. lived with her mother, N.C. and her father, E.P., in an apartment in Madison, Tennessee. S.P. had two younger brothers and a younger sister.

S.P.'s mother came to the United States from Argentina the year before S.P. was born.

N.C. worked at a daycare facility during the day while her children either went to school or went to work with her. N.C. also worked on Saturdays as a housekeeper from approximately 10:00 a.m. until 7:00 p.m. When N.C. was at work on Saturdays, a family friend watched the children at their home. E.P. worked a varied schedule at a local cold storage facility.

In early March of 2006, E.P. was in the hospital. At the same time that E.P. was in the hospital, the family's regular babysitter was out of town. Appellant offered to babysit for the children while N.C. went to work on Saturday, March 4, 2006. Appellant had "a very good relationship with the children." He often helped the family out and "would always bring something for [the children]" like "movies or dolls." Appellant did not ask N.C. to pay him for babysitting, and Appellant arrived at the house that morning before N.C. left for work.

Sometime that afternoon, S.P. was playing outside with her friend Lauren, whose grandmother, Judy Troutt, lived upstairs. While the two girls were playing, S.P. told Lauren that Appellant did some inappropriate things to her while she was lying on the couch earlier that day. Lauren insisted that the girls tell her grandmother. The girls went upstairs and talked to Ms. Troutt who immediately called the police. When N.C. arrived home that evening from work, there were four police cars outside her apartment.

Shortly after Ms. Troutt called the police, Appellant knocked on her door. Appellant wanted S.P. to come back home. Ms. Troutt refused to let S.P. go anywhere with Appellant. Appellant "looked like he wanted to hit her or something" and appeared "very threatening and scary" to Lauren. Appellant tried to reach for S.P., but the police arrived and took Appellant into custody at that time.

S.P. was taken for a forensic interview and medical examination at General Hospital in Nashville shortly after the police arrived. S.P. told Lisa Dupree, a licensed clinical social worker and veteran employee of Our Kids Center, that Appellant touched her private with his fingers. S.P. reported to Ms. Dupree that Appellant did not touch her in any other manner. S.P. denied having pain or bleeding and denied any prior instances of abuse by Appellant. S.P. later reported to a case worker that she was watching Hannah Montana on the Disney Channel when the incident occurred.

S.P. was examined by Sue Ross, a pediatric nurse practitioner and employee of Our Kids Center. Ms. Ross described S.P. as well-nourished and did not see any signs of chronic abuse or neglect. There were no physical injuries, including injuries to the genital and anal area. Swabs were collected from S.P.'s external genital area and anal area as part of the exam.

As a result of information gleaned from the investigation that was presented to the grand jury, Appellant was indicted in June of 2006 by the Davidson County Grand Jury for one count of rape of a child, one count of aggravated sexual battery, four counts of reckless endangerment, and one count of possession of a firearm.

At trial, S.P. testified that she was watching television on March 4, 2006, on the couch in the living room of her apartment. Appellant was sitting next to her on the couch. S.P.'s brothers and younger sister were in the back bedroom playing a Spiderman video game. S.P. reported that she fell asleep on the couch and woke up while Appellant was pulling her pants and panties down before he "got on top of [her] and started moving." S.P. used a pair of stuffed bears at trial to demonstrate Appellant's actions to the jury. S.P. reported that she kept her eyes closed during the encounter. According to S.P., Appellant's "private" touched her "private" on the "inside" and "it hurt." S.P. reported that Appellant did not touch her anywhere else on her body that day or with any other part of his body. S.P. remembered that Appellant covered them up with a "cover that had a moose on it."

When S.P.'s friend Lauren knocked on the door, Appellant got off of S.P. Appellant went to the bathroom while S.P. "pulled [her] pants up and opened the door." S.P. went outside to play with Lauren. S.P. reported the incident to Lauren, and the two girls went together to tell Ms. Troutt. S.P. reported to Lauren that Appellant "did sex to her." At trial, the trial court informed the jury that they were not to use S.P.'s statements to Lauren as substantive evidence. After the girls told Ms. Troutt about the incident, Ms. Troutt called the police. Appellant was arrested.

The arresting officers did not take a statement from S.P. because they had limited training in dealing with children. They called for a Youth Services Department sex crime detective to perform the interview. S.P. was taken to the hospital for an exam.

. . . .

The swabs that were taken from S.P. were sent to a private laboratory for Y-STR testing. Margaret Ewing, a Senior DNA Analyst from Bode Laboratories, testified at trial about the testing done on the swabs taken from Appellant and the victim. The Y-STR testing procedure examines genetic markers on the Y chromosome, found only in males. The testing revealed a small amount of male DNA on the swabs taken from S.P.'s genital and anal area. These small amounts were described as non-sperm epithelial fractions. When compared with Appellant's DNA, Appellant could not be excluded as a match to the samples. There was only a partial profile available from the vaginal swabs, however, and it indicated that only fifteen percent of the male population matched the samples taken from S.P.'s genital area. The swabs taken from the perianal area were only based on retrieval of a single allele, which indicated that 62% of the male population matched the profile. The lab also ran DNA testing, including PCR and STR analysis on the swabs. A preliminary DNA test on the swabs revealed no male DNA. However, it was explained that the abundance of female DNA can mask male DNA.

. . . .

The defense also introduced evidence that the Department of Children's Services had investigated S.P.'s family on several prior occasions. In fact, E.P., S.P.'s father, had two prior convictions for two counts of attempted child neglect.

At the conclusion of the proof, the jury found Appellant not guilty of rape [of a child] in count one. The jury convicted Appellant of aggravated sexual battery in count two. After a sentencing hearing, the trial court sentenced Appellant to twelve years in incarceration.

*State v. Adrain Keith Washington*, No. M2008-01870-CCA-R3-CD, 2010 WL 653008, at *1-3 (Tenn. Crim. App. Feb. 24, 2010), *perm. app. denied* (Tenn. Aug. 26, 2010). This court affirmed petitioner's conviction and sentence. *Id.* at *1.

## B. Procedural History

Petitioner filed a petition for post-conviction relief and, through appointed counsel, filed an amended petition. The post-conviction court held an evidentiary hearing on February 3, 2012, and denied relief by written order dated March 8, 2012. It is from the denial of relief that petitioner now appeals.

## C. Facts from Post-Conviction Evidentiary Hearing

Petitioner testified on his own behalf. He stated that he believed that trial counsel provided ineffective assistance by failing to argue the "rule of cancellation." Petitioner recalled that the victim testified to "penile[-] vaginal" contact at trial, but an expert witness from Our Kids' Center testified that the victim had disclosed "hand" to genital touching. Petitioner acknowledged that the inconsistent statements may have contributed to the jury's verdict of not guilty with regard to the rape of a child charge. However, he believed that had counsel argued the rule of cancellation more strenuously, the trial court may not have allowed the second count of the indictment, aggravated sexual battery, to go to the jury. His understanding of the rule of cancellation was that the victim's inconsistent statements "should have cancelled out," thus preventing either count from being considered by the jury.

Petitioner also contended that trial counsel should have objected to certain testimony that he deemed prejudicial. He stated that the victim's mother testified that both she and the victim received counseling for two years, that the victim suffered difficulties at school, that a counselor advised them to relocate, and that the victim's mother would cry "bitterly." Petitioner thought that the jury would have assumed he was guilty because of the mother's testimony.[1]

On cross-examination, petitioner confirmed that his position was that the rule of cancellation should have been applied to inconsistent statements that could not be explained and should have prevented either count of the indictment from going to the jury. He said there was one act that was made the basis for two separate charges. The State reviewed the trial transcript with petitioner. He agreed that trial counsel objected to the testimony about counseling and that trial counsel stated, "My objection goes to essentially drawing sympathy for or attempting to elicit sympathy." However, all of the other testimony about which petitioner complained had already been admitted.

Trial counsel testified that his knowledge of the rule of cancellation was "kind of hazy." He stated that when he reviewed the issues in the instant case, that principle did not come to mind. Although not by name, trial counsel argued "strenuously" that the victim had made inconsistent statements and was not believable. On that basis, he argued in the motion for judgment of acquittal that count two of the indictment should not go to the jury because of the inconsistencies in the victim's testimony. Trial counsel conceded that count one could properly be considered by the jury but that both counts of the indictment could not proceed to the jury because the child "alleged one particular touching."

---

[1] Petitioner offered additional testimony about various claims of ineffective assistance of counsel. However, because he has abandoned those claims on appeal, those facts are not pertinent to our review. We also have omitted the extraneous testimony on those issues offered by trial counsel.

Trial counsel took the same approach during closing arguments. He agreed that the jury must have credited his argument because it convicted on aggravated sexual battery but acquitted on rape of a child.

With regard to his failure to object to the testimony that petitioner deemed prejudicial, trial counsel agreed that it was "a very conscious trial strategy to present the child, and maybe even more so[,] the family[,] . . . [as] sort of mentally unstable and emotionally unbalanced. . . ." The family had a history of contact with the Department of Children's Services, and trial counsel wanted to highlight the family dynamic. Based on his trial strategy, he elected not to object until he "thought it [had gotten] too far."

On cross-examination, trial counsel clarified that generally speaking, an attorney would argue against the more serious count of the indictment going to the jury. However, in this case, the victim testified at trial that penetration had occurred, and trial counsel stated that in the light most favorable to the State, that count would go to the jury. He instead argued against aggravated sexual battery going to the jury because the only way for the jury to consider it was as an alternate theory of the sole event. He argued that the State should have had to elect which theory it wanted to pursue. The trial court denied his motion, and the jury deliberated on both counts of the indictment.

## II. Analysis

Although petitioner raised several instances of ineffective assistance of counsel in his petition and amended petition, he pursues only two issues on appeal. He claims that trial counsel was ineffective for failing to argue the rule of cancellation and for failing to object to prejudicial testimony from the victim's mother.

To obtain relief in a post-conviction proceeding, a petitioner must demonstrate that his or her "conviction or sentence is void or voidable because of the abridgement of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103 (2012). A post-conviction petitioner bears the burden of proving his or her factual allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f) (2012). "'Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" *Lane v. State*, 316 S.W.3d 555, 562 (Tenn. 2010) (quoting *Grindstaff v. State*, 297 S.W.3d 208, 216 (Tenn. 2009)).

Appellate courts do not reassess the trial court's determination of the credibility of witnesses. *Dellinger v. State*, 279 S.W.3d 282, 292 (Tenn. 2009) (citing *R.D.S. v. State*, 245 S.W.3d 356, 362 (Tenn. 2008)). Assessing the credibility of witnesses is a matter entrusted to the trial judge as the trier of fact. *R.D.S.*, 245 S.W.3d at 362 (quoting *State v. Odom*, 928

S.W.2d 18, 23 (Tenn. 1996)).  The post-conviction court's findings of fact are conclusive on appeal unless the preponderance of the evidence is otherwise.  *Berry v. State*, 366 S.W.3d 160, 169  (Tenn. Crim. App. 2011) (citing  *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997); *Bates v. State*, 973 S.W.2d 615, 631 (Tenn. Crim. App.1997)).  However, conclusions of law receive no presumption of correctness on appeal. *Id.* (citing *Fields v. State*, 40 S.W.3d 450, 453 (Tenn. 2001)).   As a mixed question of law and fact, this court's review of petitioner's ineffective assistance of counsel claims is de novo with no presumption of correctness.  *Felts v. State*, 354 S.W.3d 266, 276 (Tenn. 2011) (citations omitted).

The Sixth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment, and article I, section 9 of the Tennessee Constitution require that a criminal defendant receive effective assistance of counsel.  *Cauthern v. State*, 145 S.W.3d 571, 598 (Tenn. 2004) (citing *Baxter v. Rose*, 523 S.W.2d 930 (Tenn. 1975)). When a petitioner claims that he received ineffective assistance of counsel, he must demonstrate both that his lawyer's performance was deficient and that the deficiency prejudiced the defense.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Finch v. State*, 226 S.W.3d 307, 315 (Tenn. 2007) (citations omitted).  It follows that if this court holds that either prong is not met, we are not compelled to consider the other prong.  *Carpenter v. State*, 126 S.W.3d 879, 886 (Tenn. 2004).

To prove that counsel's performance was deficient, petitioner must establish that his attorney's conduct fell below an objective standard of "'reasonableness under prevailing professional norms.'" *Finch*, 226 S.W.3d at 315 (quoting *Vaughn v. State*, 202 S.W.3d 106, 116 (Tenn. 2006)). As our supreme court has previously held:

> "[T]he assistance of counsel required under the Sixth Amendment is counsel reasonably likely to render and rendering reasonably effective assistance. It is a violation of this standard for defense counsel to deprive a criminal defendant of a substantial defense by his own ineffectiveness or incompetence. . . . Defense counsel must perform at least as well as a lawyer with ordinary training and skill in the criminal law and must conscientiously protect his client's interest, undeflected by conflicting considerations."

*Id.* at 315-16 (quoting *Baxter*, 523 S.W.2d at 934-35).  On appellate review of trial counsel's performance, this court "must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's conduct, and to evaluate the conduct from the perspective of counsel at that time." *Howell v. State*, 185 S.W.3d 319, 326 (Tenn. 2006) (citing *Strickland*, 466 U.S. at 689).

To prove that petitioner suffered prejudice as a result of counsel's deficient performance, he "must establish a reasonable probability that but for counsel's errors the

result of the proceeding would have been different." *Vaughn*, 202 S.W.3d at 116 (citing *Strickland*, 466 U.S. at 694). "A 'reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Id.* (quoting *Strickland*, 466 U.S. at 694). As such, petitioner must establish that his attorney's deficient performance was of such magnitude that he was deprived of a fair trial and that the reliability of the outcome was called into question. *Finch*, 226 S.W.3d at 316 (citing *State v. Burns*, 6 S.W.3d 453, 463 (Tenn. 1999)).

### A. Failure to Argue the Rule of Cancellation

Tennessee law holds that "contradictory statements by a witness in connection with the same fact cancel each other." *State v. Matthews*, 888 S.W.2d 446, 449 (Tenn. Crim. App. 1993) (citing *Taylor v. Nashville Banner Pub. Co.*, 573 S.W.2d 476, 482 (Tenn. Ct. App. 1978)). However, the "rule of cancellation applies only when inconsistency in a witness's testimony is unexplained and when *neither* version of his testimony is corroborated by other evidence." *Id.* (citing *Taylor*, 573 S.W.2d at 483) (emphasis added). Moreover, as the post-conviction court correctly noted, the rule of cancellation may only be applied when a witness's *sworn* statements are contradictory. *State v. Roger Dale Bennett*, No. 01C01-9607-CC-00139, 1998 WL 909487, at *5 (Tenn. Crim. App. Dec. 31, 1998).

In addressing this claim, the post-conviction court concluded that

> the cancellation rule is inapplicable since the statements contradicting the victim's trial testimony were unsworn statements given over the course of a forensic interview. In addition, the inconsistencies between the two statements are easily explained by the age of the victim, and the trial testimony was also corroborated by DNA evidence. For these reasons, the cancellation rule was inapplicable and any inconsistency between the victim's forensic interview and trial testimony merely raised a credibility issue for the jury to resolve. This issue is without merit.

We agree with the post-conviction court. We also highlight that the forensic evidence at trial established that male genetic material was found on the victim's genital and anal area, thus corroborating her trial testimony. For these reasons, the rule of cancellation did not apply to the instant case. Trial counsel cannot be deemed to have rendered ineffective assistance by failing to raise a legal theory that, by definition, did not apply to the case. Petitioner is not entitled to relief on this claim of error.

### B. Failure to Object to Prejudicial Testimony

Petitioner next claims that trial counsel's representation of him was ineffective because counsel failed to object to allegedly prejudicial testimony. As outlined more fully

above, the prejudicial testimony about which petitioner now complains involved the victim's mother explaining to the jury that she and the victim underwent counseling, the counselor advised them to relocate, the victim experienced difficulties in school, and the victim's mother would cry "bitterly."

In denying relief on this claim, the post-conviction court concluded that "[t]rial counsel's decision to object or not object to testimony directly relates to overall trial strategy, which the [c]ourt is not in a position to second-guess." This conclusion is correct. Trial counsel testified that he wanted the jury to view the victim and her family as "mentally unstable and emotionally unbalanced." Based on this strategy, he made the "very conscious" decision to refrain from objecting to the mother's testimony until it became necessary. In furtherance of trial counsel's strategy, he successfully argued a motion in the trial court to allow limited introduction of records from the Department of Children's Services to substantiate that the family had a history with the department. "We should defer to trial strategy or tactical choices if they are informed ones based upon adequate preparation." *Harris v. State*, 947 S.W.2d 156, 163 (Tenn. Crim. App. 1996).

Trial counsel developed a reasonable and informed trial strategy. To some degree, it was obviously successful because the jury acquitted petitioner on the charge of rape of a child, despite the existence of male genetic material on the victim's body. We cannot say that trial counsel's performance was deficient in this regard or that petitioner was prejudiced by trial counsel's strategy. Petitioner is not entitled to relief on this claim.

## CONCLUSION

Based on our review of the record, the parties' briefs, and the applicable law, we affirm the judgment of the post-conviction court.

_____
ROGER A. PAGE, JUDGE